IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JESSE OLIVAR,

    Plaintiff,                    CIV S-03-0891 GGH PS

    vs.

JOHN E. POTTER,

    Defendant.                 ORDER

_____/

INTRODUCTION AND SUMMARY

        This action is before the undersigned pursuant to 28 U.S.C. § 636(c), consent to proceed before a magistrate judge. Plaintiff is proceeding pro se. Defendant is represented by Kristen Door of the United States Attorney's Office. Hearing on defendant's motion for summary judgment, filed August 16, 2006, and previously scheduled for September 21, 2006, was vacated from the court's calendar and taken under submission.[1] For the following reasons, the court recommends defendant's motion be GRANTED on the merits of plaintiff's claims.

\\\\\

\\\\\

---

[1] Plaintiff had telephoned the court a few days before the hearing, representing that he had surgery scheduled for the day of the hearing.

This action is proceeding on the Amended Complaint, filed May 15, 2003.[2] Plaintiff, a former employee of the United States Postal Service, alleges that he was discriminated against for being Hispanic and being male in regard to "treatment and safety." Specifically, he alleges that management made false statements, mutilated public records, "failed to report violations of irregular practices" [sic], delayed information involving occupational worker compensation program," and gave preferences to some employees while obstructing prospects of other employees. He also claims that after he filed his EEO complaint, he suffered reprisal. As a result, management caused plaintiff to use his sick and annual leave due to stress. Plaintiff has attached copies of various EEOC decisions to his amended complaint.[3]

Defendant moves for summary judgment on the following grounds: that plaintiff did not exhaust his administrative remedies, that his discrimination claims should be dismissed because plaintiff can not show he was subjected to materially adverse actions under Title VII or that defendant discriminated against him or retaliated against him due to his EEO claims.

A recurring issue in this case is the lengths to which the undersigned should go in "helping" the pro se plaintiff in his case. The Ninth Circuit may be of two conflicting minds on the issue. On the one hand, we are told that pro se litigants must follow the same rules of procedure that govern other litigants. King v. Atiyeh, 814 F.2d 565, 567(1987) (waiver of originally pled but omitted causes of action in amended complaint). Also, the district court has no "obligation to give notice of Rule 56's evidentiary standards" to "pro se litigants in the ordinary civil case," and "admissible evidence" must be submitted. Jacobsen v. Filler, 790 F.2d 1362, 1364, 1365 (9th Cir.1986). See also Hal Roach Studios v. Richard Feiner & Co., 896 F.2d 1542, 1550 (9th Cir. 1990) ("well established that unauthenticated documents cannot be

---

[2] By order of March 27, 2006, plaintiff's motion to amend and proposed third amended complaint were denied.

[3] The amended complaint is not verified and serves as background only and notice of claims brought.

considered on a motion for summary judgment"). Finally, as a general rule, the judge does not have to scour the record in efforts to find evidence which might defeat summary judgment, i.e., the litigant must supply the needed evidence within the motion or opposition. See Carmen v. San Francisco Unified School Dist. 237 F.3d 1026, 1030 (9th Cir. 2001) stating the rule for represented parties: "Other circuits are not unanimous, but Forsberg is both binding on us and consistent with the majority view that the district court may limit its review to the documents submitted for the purposes of summary judgment and those parts of the record specifically referenced therein. But see Jones v. Blanas, 393 F.3d 918, 922-23 (2004) ("[b]ecause Jones is pro se, we must consider as evidence in his opposition to summary judgment all of Jones contentions offered in motions and pleadings" signed under penalty of perjury). See also Fraser v. Goodale, 342 F.3d 1032, 1036-37 (9th Cir. 2003) (form of evidence submitted is irrelevant as long as the evidence *might be* made admissible at trial.)

The undersigned will follow long established law, and not interject himself into the lawsuit as an advocate for the pro se plaintiff, be that advocacy on procedural or substantive grounds. In this case, not only is the operative complaint not verified, but plaintiff's opposition is not verified and contains no declaration or any statement that it is made under penalty of perjury. Furthermore, it is untimely, having been filed weeks after the hearing was vacated. Therefore, only the exhibits to this opposition will be considered to the extent they are relevant, and despite the fact that they are not authenticated because they could be admissible at trial if authenticated.

FACTUAL BACKGROUND[4]

Plaintiff, a Hispanic Male, began working in 1986 as a custodian for the U.S. Postal Service. In 2001, he was working at the Royal Oaks facility under supervisor Hayward

---

[4] The court accepts defendant's version of the facts since plaintiff's opposition which contains his version of the events, is not verified in any way and does not present disputed or undisputed facts but is presented only as plaintiff's argument in opposition.

3

1  Washington.  Plaintiff had complained about how he was being treated by Washington to his
2  shop steward several times, and then got in an argument with Washington on October 5, 2001.
3  (Olivar Depo., Defendant's App. of Evidence in Support of Mot.,Tab 1, at 73-74.)  According to
4  Olivar's deposition, Washington told him that he could not have "official" time (overtime) to
5  work on his EEO matter that day, and to call his shop steward the following Monday.  (Id. at 74,
6  79.)  Washington then threatened to call the police and slammed the door when Olivar left his
7  office.  (Id. at 74.)  Olivar believed this conduct was in retaliation for his intention to file an EEO
8  complaint.  (Id. at 90-91.)  Washington's version of this incident is that Olivar became enraged
9  when Washington told him he could not have overtime to fill out his EEO paperwork, and locked
10 the door to Washington's office, yelling. (Young Decl. ¶ 7, Defendant's Tab 3.)   Washington
11 said he would call the police if Olivar did not leave his office because he felt threatened.  (Id.)

12         After the manager of maintenance at the Royal Oaks facility, Micheal Young,
13 investigated the incident, he gave Olivar a new supervisor, Randy Davis.  (Id. at ¶ 8.)  Olivar
14 claims that Washington continued to harass him by "watching" and "looking" at him.  (Olivar
15 Depo., Defendant's Tab 2, at 59.) At his deposition, Olivar conceded that Washington could have
16 been angry because Olivar wanted overtime to do this paperwork, and not because Olivar was
17 filing an EEO complaint.  (Olivar Depo., Defendant's Tab 1, at 124-26.)  Under Davis, Olivar had
18 the same job duties and pay.  (Olivar Depo., Defendant's Tab 2, at 67-68.)

19         In regard to Micheal Young, Olivar claims that this supervisor racially
20 discriminated against him in the manner in which he investigated the argument with Washington.
21 At deposition, he explained only that the forms were not filled out properly and that his version
22 was not recorded on the form.  (Olivar Depo., Defendant's Tab 1, at 114-16; Defendant's Tab 2,
23 at 55-58.)  Olivar claims that Young knew of his prior EEO activity.  (Olivar Depo., Defendant's
24 Tab 2, at 57, 82.)

25         Olivar also claims that Young discriminated against him on October 30, 2001
26 when he asked Olivar to lower the volume on his radio which was playing soul music, while

1  Young did not ask his Caucasian coworker to lower his volume while he was playing country
2  music.  At deposition, Olivar admitted that Young told both Olivar and his coworker to lower
3  their music.  (Id. at 69-70.)
4         On December 14, 2001, while at a weekly safety meeting, Olivar claims that
5  another supervisor, Randy Davis, interrupted plaintiff's question and told him to discuss it with
6  him later.  (Id. at 73-74.)
7         In January, 2002, Olivar requested and received a new position at the West
8  Sacramento facility, with supervisor Vince Arrioja.  Plaintiff claims that he tried to talk to this
9  supervisor about an overpayment to plaintiff and request that his paycheck be corrected, but that
10 Arrioja was "rude and unprofessional" to him, and screamed at him.  (Olivar Depo., Defendant's
11 Tab 1, at 161, 163.)  Plaintiff conceded that Arrioja did not say anything at all about plaintiff's
12 race, color, prior EEO activity or mental status.  (Id. at 129.)  Plaintiff did not know whether
13 Arrioja knew of his previous EEO activities, but only speculated at his deposition.  (Olivar
14 Depo., Defendant's Tab 2, at 129-31.)
15         In August, 2002, Olivar was reassigned to the facility at Sacramento Airport.
16 Olivar quit on July 25, 2005, because he thought coworkers were making jokes about him, but he
17 admits that none of the jokes were about his race or color.  (Id. at 41-43, 45.)
18 SUMMARY JUDGMENT STANDARDS UNDER RULE 56
19         The "purpose of summary judgment is to 'pierce the pleadings and to assess the
20 proof in order to see whether there is a genuine need for trial.'"  Matsushita Elec. Indus. Co. v.
21 Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986) (quoting Fed. R. Civ. P.
22 56(e) advisory committee note to 1963 amendment).  Summary judgment is appropriate "if . . .
23 there is no genuine issue as to any material fact, and . . .  the moving party is entitled to judgment
24 as a matter of law."  Rule 56(c).  Disputed facts must be material (affecting the outcome of the
25 suit under the governing law), and genuine (supported by evidence permitting a reasonable jury
26 to return a favorable verdict).  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct.

2505, 2510 (1986).

The moving party:

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (quoting Rule 56(c)).

The moving party without the burden of proof at trial may rely "solely on the pleadings, depositions, answers to interrogatories, and admissions on file." Id. (citations omitted.) That party need only point to the absence of a genuine material factual issue, and is not required to produce evidence negating the opponent's claim. Id. at 323-24; Lujan v. National Wildlife Fed'n, 497 U.S. 871, 885, 110 S. Ct. 3177, 3187 (1990).

When the moving party meets its responsibility, the burden shifts to the opposing party. Matsushita, 475 U.S. at 586, 106 S. Ct. at 1356. The opposing party then must submit "significant probative evidence" on each element of his claims on which he bears the burden at trial.[5] Barnett v. Centoni, 31 F.3d 813, 815 (9th Cir. 1994). Unverified denials in pleadings are insufficient. Neither can conclusory statements defeat a properly supported motion. Scott v. Rosenberg, 702 F.2d 1263, 1271-72 (9th Cir. 1983). Rather, specific facts in the form of affidavits or admissible discovery material must be submitted. Rule 56(e); Matsushita, 475 U.S. at 586 n.11, 106 S. Ct. at 1356 n.11.

The opposing party need not conclusively establish any fact. To demonstrate a genuine dispute, however, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."

---

[5] "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 322.

6

1  Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (citation omitted).  In other words, the evidence
2  must demonstrate that a trial is required to resolve the parties' differing versions of the truth.
3  T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987).
4          The court believes the evidence of the opposing party, Anderson, 477 U.S. at 255,
5  106 S. Ct. at 2513, and draws all reasonable inferences in its favor, Matsushita, 475 U.S. at 587,
6  106 S. Ct. at1356.  Nevertheless, inferences are not drawn out of the air, and the opposing party
7  must produce a factual predicate from which to draw an inference.  Richards v. Nielsen Freight
8  Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985).
9          The Ninth Circuit "has set a high standard for the granting of summary judgment
10 in employment discrimination cases."  Schnidrig v. Columbia Mach., Inc., 80 F.3d 1406, 1410
11 (9th Cir.1996); accord Chuang v. University of California Davis, Bd. of Trustees, 225 F.3d 1115,
12 (9th Cir. 2000).  On Title VII claims, the degree of proof required to establish a prima facie case
13 on summary judgment "is minimal and does not even need to rise to the level of a preponderance
14 of the evidence."  Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir.1994).  The plaintiff need
15 only offer evidence "which gives rise to an inference of unlawful discrimination."  Id.  "[V]ery
16 little" evidence must be produced to establish a prima facie case.  Sischo-Nownejad v. Merced
17 Community College Dist., 934 F.2d 1104, 1111 (9th Cir.1991).  "If a rational trier of fact could,
18 on all the evidence, find that the employer's action was taken for impermissibly discriminatory
19 reasons, summary judgment for the defense is inappropriate."  Schnidrig, 80 F. 3d at 1410
20 (quoting Wallis, 26 F.3d at 889).
21 ANALYSIS
22         A.  EXHAUSTION OF ADMINISTRATIVE REMEDIES
23         There exists a dichotomy of law in connection with exhaustion per se of
24 administrative remedies.  One line of authority holds that exhaustion per se is a statutory
25 precondition of suit, and does not impact the subject matter jurisdiction of the court, Vinieratos
26 v. Dept. Of Air Force, 939 F.2d 762, 768 (and footnote 5) (9th Cir. 1991); another line uses the

1  jurisdictional terminology, B.K.B. v. Maui Police Dept., 276 F.3d 1091, 1099) (9th Cir. 2002).
2  The former line of authority is more correct in that the court generally has jurisdiction over Title
3  VII complaints, and jurisdiction to rule upon the conditions under which the suit may be brought.
4  However, an important distinction exists – if not jurisdictional, the issue of exhaustion may be
5  waived.  If it is jurisdictional, of course, the issue cannot be waived, and may be brought up at
6  any time, even sua sponte.  Since the court chooses to follow the non-jurisdictional "precondition
7  to suit" line of cases, exhaustion may be waived.

8  A motion based on lack of exhaustion of administrative remedies is procedurally
9  akin to a motion to compel arbitration in that both involve threshold issues not on the merits
10 which should be resolved prior to the expenditure of resources by the court and parties.  Federal
11 courts have held that a waiver may be found under the Federal Arbitration Act if there is "(1)
12 knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right;
13 and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." Britton
14 v. Co-op Banking Group, 916 F.2d 1405, 1412 (9th Cir. 1990).

15 Because the issues of exhaustion of administrative remedies and arbitration are
16 analogous in that they both involve threshold issues, the court will apply the standard set forth
17 above in order to determine whether defendant waived his right to bring a  motion on this
18 ground.

19 Defendant previously brought a motion for summary judgment on November 24,
20 2003, based on lack of exhaustion due to plaintiff's failure to file a formal complaint within
21 fifteen days of receiving notice from the EEO counselor of his right to file a discrimination
22 complaint.  See 29 C.F.R. § 1614.105(d).  This court denied the motion based on equitable
23 tolling.  The instant motion raises different grounds for lack of exhaustion; however, the
24 information in support of defendant's motion was obviously available at the time defendant first
25 appeared in this action.  (Def.'s App. of Evidence in Support of Mot., Tab 4.)  In the motion,
26 defendant does not only not explain why he did not bring this motion sooner, but does not even

refer to the prior summary judgment motion. Consequently, defendant does not offer any excuse for failing to raise the instant exhaustion grounds earlier.

As to the issue of prejudice, it is not so much plaintiff who is prejudiced by defendant's failure to bring this motion sooner as it is the court. Considerable resources have been spent by the court in this action which has been pending for over three and a half years. Defendant's lack of diligence in bringing the pending motion should not be rewarded.

For the reasons discussed above, the court finds that defendant has waived his right to bring a motion on exhaustion grounds. Accordingly, the portion of defendant's motion relating to exhaustion should be denied. [6]

B. THE MERITS

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., makes it illegal for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color. . . or national origin." 42 U.S.C. S 2000e-2(a)(1). It governs claims of racial or national origin discrimination and claims of retaliation for complaining of such discrimination. The general rule regarding indirect proof of an employer's intent to discriminate is set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817 (1973): (1) plaintiff must establish a prima facie case; (2) defendant must then come forward with legitimate nondiscriminatory reasons for the action; and (3) plaintiff has the final burden to show that the action was a pretext for discrimination. See Steiner v. Showboat Operating Co., 25 F.3d 1459, 1464-65 (9th Cir.1994).

An employee may show violations of Title VII by proving disparate treatment, a hostile work environment, or retaliation for protected activities. Sischo-Nownejad v. Merced

---

[6] Plaintiff does not have clean hands in this matter as his theories of discrimination have been a moving target both before and after the filing of his court action. Nevertheless, the issue of violating a precondition to the filing of suit should not have awaited this second motion.

Community College Dist., 934 F.2d 1104, 1109-10 (9th Cir. 1991). The exact theories of Title VII discrimination relied on by plaintiff to support the amended complaint are disparate treatment and retaliation. He has not checked the boxes of the form complaint which list "failure to employ me," "termination of my employment," or "failure to promote me," but engaged in other acts so that he was treated differently from other non-Hispanic employees.

Unless plaintiff can offer direct evidence of an employer's intent to discriminate, a prima facie case requires a showing of his membership in a protected class, adverse treatment, and that this treatment was different from other non-minority employees who were similarly situated.[7] Jauregui v. City of Glendale, 852 F.2d 1128, 1134 (9th Cir. 1988). Disparate treatment discrimination generally focuses upon a particular adverse action, e.g., failure to promote, transfer of assignment, termination caused by discriminatory animus. Retaliation arises when management takes an adverse action against an employee because that employee engaged in protected activity, e.g., the filing of EEO complaints. The court, therefore, considers this case to be based on two theories of Title VII violation, (a) disparate treatment based on racial

\\\\\

\\\\\

---

[7] A slightly different test was articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817 (1973). The Supreme Court required the plaintiff to show:

> (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

Id. at 1824. At least one other court has pointed out, and this court agrees, that a strict mechanical application of each factor has been proscribed by the Supreme Court, especially where the factor has no bearing on the alleged disparate treatment in the particular case. Beaven v. Com. of Ky., 783 F.2d 672, 676 (6th Cir. 1986). See also Wooten v. New York Tel. Co., 485 F. Supp. 748, 760 (S.D.N.Y. 1980) (finding that the fourth McDonnell Douglas factor is not necessary in a discriminatory discharge case). This court finds that the fourth McDonnell Douglas factor is not relevant to the case at hand.

discrimination, and (b) retaliation for engaging in activities protected by Title VII.[8]  Each of these distinct Title VII claims has different elements.  The court will consider them separately.

### 1. Disparate Treatment

The elements of a disparate treatment claim are: 1) plaintiff is a member of a protected class; 2) an adverse employment action occurred; and 3) similarly situated individuals outside plaintiff's protected class were treated more favorably.  Chuang v. Univ. of Cal., 225 F.3d 1115, 1123 (9th Cir. 2000).

Defendant argues that plaintiff has not demonstrated an adverse employment action.[9]  This fact is undisputed and unopposed by plaintiff.  Plaintiff testified at his deposition that he remained on the same shift with the same duties and same pay.  (Olivar Depo., Defendant's Tab 2, at 57- 58, 67-68.)  It is also undisputed that none of plaintiff's supervisors whose actions are questioned here ever made comments about plaintiff's race, color, or prior EEO activity.[10]  (Id. at 77, 128-31.)  Therefore, plaintiff's disparate treatment claim fails as a

---

[8] Plaintiff is the master of his action, and the court will not analyze it on a theory plaintiff has not advanced.  Cf. Merrell Dow Pharm. Inc. v. Thompson, 478 U.S. 804, 809 n. 6, 106 S. Ct. 3229, 3233 n. 6, (1986) (stating that jurisdiction may not be sustained on a theory that the plaintiff has not advanced).  Moreover, contentions unsupported by explanation or authority are deemed waived.  See FDIC v. Garner, 126 F.3d 1138, 1145 (9th Cir. 1997) (claim waived when no case law or argument in support is presented); Seattle School Dist., No. 1 v. B.S., 82 F.3d 1493, 1502 (9th Cir. 1996) (party who presents no explanation in support of claim of error waives issue); see also Pelfresne v. Village of Williams Bay, 917 F.2d 1017, 1023 (7th Cir.1990); ("A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority . . . forfeits the point.  We will not do his research for him."); Johnson v. Indopco, 887 F. Supp. 1092, 1096 (N.D. Ill. 1995) (finding argument unsupported by relevant authority, or by demonstration of why it is a good argument despite lack of authority, constitutes mere assertion not meriting court's attention).  Finally, it is not the duty of the court to search the record for genuine issues which would avoid summary judgment.  Cf. Carmen v. San Francisco Unified School Dist., 237 F.3d 1026,(9th Cir.2001) (judge need not consider on summary judgment materials outside the motion papers and things referred to therein).

[9] Examples of adverse action include transfers of job duties and undeserved performance ratings.  Yartzoff v. Thomas, 809 F.2d 1371, 1376 (9th Cir. 1987)

[10] Although some of plaintiff's EEO complaints concerned disability and exhaustion has been waived, the claims at issue are limited to those raised in the amended complaint which

matter of law, and defendant should be granted summary judgment on this theory.

### 2. Retaliation

A suit for retaliation may be brought under Title VII which provides in part:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice, made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).

This section would protect an employee or former employee from retaliation as a result of filing an EEOC complaint. Arnold v. U.S., 816 F.2d 1306, 1310 (9th Cir. 1987); Richardson v. Restaurant Marketing Associates, Inc., 527 F. Supp. 690, 695 (N.D.Cal. 1981). When determining a retaliation case, the Ninth Circuit, like most circuits, follows the general rule regarding proof of Title VII violations as set forth McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 1824 (1973). See Miller v. Fairchild Industries, Inc., 797 F.2d 727, 730-31 (9th Cir.1986) (order and allocation of proof for retaliation claims follows familiar scheme announced in McDonnell Douglas).

To establish a prima facie case of prohibited retaliation, plaintiff must prove that: "(1) he engaged in activity protected by Title VII;[11] (2) the employer made an adverse employment decision; and (3) a causal connection existed between the two." Folkerson v. Circus Circus Enterprises, Inc., 107 F.3d 754, 755 (9th Cir.1997).[12] A causal connection may be shown

---

expressly alleges discrimination based on race only.

[11] The fact that plaintiff opposed unlawful employment practices and/or participated in Title VII proceedings will establish this element. Hochstadt v. Worcester Foundation for Experimental Biology, 425 F. Supp. 318, 324 (D.Mass. 1976).

[12] Both prima facie cases of race discrimination and retaliation require that the plaintiff demonstrate an adverse employment action. See Trent v. Valley Elec. Ass'n., 41 F.3d 524, 526 (9th Cir.1994).

12

by raising an inference that the discrimination complaint was the probable reason for the adverse employment decision.  Id.  Evidence of a causal connection, however, must consist of more than "mere allegation and speculation."  See Nelson v. Pima Community College, 83 F.3d 1075, 1081 (9th Cir.1996).

The issue of what constitutes an adverse employment decision has recently been addressed in Burlington v. N. & Santa Fe Ry. Co. v. White, 548 U.S. ___, 126 S.Ct. 2405, 2414 (2006).  The court interpreted the anti-retaliation provision of Title VII broadly to include activities beyond the workplace and beyond "ultimate employment decisions."  The court set forth a new standard: "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.' " Id. at 2415, quoting Rochon v. Gonzales, 438 F.3d 1211, 1219 (D.C. Cir. 2006), and Washington v. Illinois Dept. of Revenue, 420 F.3d 658, 662 (7th Cir. 2005).  "Petty slights or minor annoyances that often take place at work and that all employees experience" do not constitute materially adverse action.  Id.

In this case, the actions complained of by plaintiff constitute only petty slights, and do not rise to the level of materially adverse actions.  As set forth above, the actions described by plaintiff include his claim that Supervisor Young told Olivar to lower the volume on his radio, but his concession that Young also told Olivar's Caucasian coworker to lower his music also.  Olivar's claim that supervisor Davis interrupted plaintiff's question at a safety meeting and told him to discuss it with him later is also trivial under reasonable standards.

The claim that supervisor Young was discriminatory in the way he investigated the argument with Washington is only a minor annoyance.  As set forth above, the fact that the forms were not filled out properly and that plaintiff's version was not recorded on the form does not constitute an adverse action.

\\\\\

In regard to plaintiff's claim that supervisor Arrioja was rude to him in requesting that plaintiff not raise personnel matters in a staff meeting, this incident on February 15, 2002 is only a petty slight, at best. Furthermore, plaintiff conceded that none of these supervisors made comments about plaintiff's race, color or prior EEO activity. Therefore, defendant's summary judgment motion will be granted in regard to this claim also.[13]

CONCLUSION

ACCORDINGLY, IT IS ORDERED that defendant's summary judgment motion, filed August 16, 2006, is granted. The Clerk shall enter judgment in favor of defendant.

DATED: 12/26/06

/s/ Gregory G. Hollows

_____

GREGORY G. HOLLOWS
U. S. MAGISTRATE JUDGE

GGH/076
Olivar0891.sj.wpd

---

[13] Plaintiff's claims that there was a prior EEO matter in 1987 that was never resolved and reference to an October 1, 2001 contact with an EEO counselor in a different case, are not relevant to the alleged adverse actions.